1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**

# United States District Court
# Central District of California

FRANCISCO PEREZ,

               Plaintiff,

      v.

EXCEPTIONAL CHILDREN'S
FOUNDATION; DOROTHY
BURBANK; DOES 1–50, inclusive,

               Defendants.

Case No. 2:14-cv-02239-ODW(VBKx)

**ORDER GRANTING IN PART
PLAINTIFF'S PARTIAL MOTION
TO REMAND [8]**

## I.   INTRODUCTION

Plaintiff Francisco Perez worked as a live-in apartment manager and handy man for Defendant Exceptional Children's Foundation ("ECF").  Perez alleges that his supervisor, Defendant Dorothy Burbank, discriminated against him for being Hispanic, making derogatory remarks about his ethnicity and making fun of his Hispanic traditions and culture.  He also contends that Burbank made comments about him being homosexual, such as telling him that his sexuality was sinful.  Perez eventually went on disability leave due to psychological issues stemming from the harassment.

When ECF terminated his employment, Perez filed this action in state court, alleging one claim for violation of the Civil Rights Act of 1866 and five state-law

1   claims.  ECF removed the action to this Court.  Perez then moved to partially remand

2   his state-law claims.  Since the Court finds that it would needlessly traverse federalism

3   bounds for the Court to weigh in on new and unsettled issues of California law, the

4   Court **GRANTS IN PART** Perez's Motion and **REMANDS** his wrongful-termination

5   and invasion-of-privacy claims.[1]  (ECF No.8.)

6                           II.    FACTUAL BACKGROUND

7           Perez, a homosexual Hispanic man, was a former employee of ECF, a

8   California corporation located in Culver City, California.  (Compl. ¶¶ 2–3.)  Perez

9   began working for ECF around September 14, 2009, as a live-in apartment manager at

10  ECF's Los Angeles facility and handy man for five ECF facilities.  (*Id.* ¶ 9.)  ECF

11  initially placed Perez on a six-month probationary period just like other employees.

12  (*Id.* ¶ 11.)   But Burbank, Perez's manager, unilaterally extended the probationary

13  period after the end of the six months.  (*Id.* ¶ 13.)   Perez eventually became a

14  permanent employee when Burbank's supervisor intervened.  (*Id.* ¶ 16.)

15          Perez alleges that following his change to permanent-employee status, Burbank

16  became racially belligerent.  (*Id.* ¶ 17.)  She made comments about "[a]ll you people

17  [Hispanics] just come here [United States] to drain the economy."  (*Id.* ¶ 19 (second

18  and third alterations in original).)  Burbank also made fun of Perez's Hispanic accent

19  and made comments in an exaggerated accent and "homosexual intonation."  (*Id.*)

20  She also told him that homosexual relationships were sinful.  (*Id.* ¶ 21.)

21          Burbank repeatedly entered Perez's apartment without permission and searched

22  his personal belongings.  (*Id.* ¶ 22.)  She criticized his Catholic prayer candles, calling

23  them "VooDoo candles."  (*Id.*)  Burbank also would not let Perez prepare Hispanic

24  foods at the facility.  (*Id.* ¶ 27.)

25          Perez complained about Burbank's actions to Miriam Hammanian, Burbank's

26  immediate supervisor, but no one intervened.  (*Id.* ¶ 23.)   After Perez attended a

27

28  [1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court
    deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

1   mandatory harassment training course, he reiterated his concerns to Burbank.  She

2   then became angry and called Perez a "fucking liar" and told him to get out of the

3   room.  (*Id.* ¶ 28.)

4   　　　Around May 15, 2012, ECF placed Perez on disability leave due to the

5   psychological issues he suffered as a result of his employment.  (*Id.* ¶ 29.)  But he was

6   never able to return to ECF, and ECF terminated his employment.

7   　　　On January 14, 2014, Perez filed suit against ECF and Burbank in Los Angeles

8   County Superior Court alleging claims for violation of the federal Civil Rights Act of

9   1866 ("CRA"), 42 U.S.C. § 1981 *et seq.*; intentional infliction of emotional distress;

10  negligent infliction of emotional distress; wrongful termination in violation of public

11  policy; invasion of privacy under article 1, section 1 of the California Constitution;

12  and common-law invasion of privacy.  (Not. of Removal Ex. A.)   Defendants

13  subsequently removed the case to this Court, invoking federal-question jurisdiction.

14  　　　On April 24, 2014, Perez moved to remand his state-law claims.  (ECF No. 8.)

15  Defendants timely opposed.  That Motion is now before the Court for decision.

16  ### III.　LEGAL STANDARD

17  　　　Federal courts are courts of limited jurisdiction, having subject-matter

18  jurisdiction only over matters authorized by the Constitution and Congress.  U.S.

19  Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

20  375, 377 (1994).  A defendant may remove a suit filed in state court only if the federal

21  court would have had original jurisdiction over the case.  28 U.S.C. § 1441(a).  But

22  courts strictly construe the removal statute against removal jurisdiction, and federal

23  jurisdiction "must be rejected if there is any doubt as to the right of removal in the

24  first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The party

25  seeking removal bears the burden of establishing federal jurisdiction.  *Durham v.*

26  *Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at

27  566).  A party may bring a remand motion whenever it appears a matter is not

28  properly before a federal court.  28 U.S.C. § 1447(c).

## IV.   DISCUSSION

Perez requests that the Court decline to exercise supplemental jurisdiction over his state-law claims, arguing that they are novel, should be left to California state courts to resolve, and substantially predominate over the one federal claim. Defendants construe Perez's argument as asking the Court to abstain from exercising any jurisdiction—original or supplemental.  The Court considers each argument in turn.

### A.   Abstention

The abstention doctrine permits a federal court to decline to exercise jurisdiction over a case otherwise properly before it. *Colo. River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976).  This doctrine is an exception to the normal rule that federal courts must exercise jurisdiction when they have it. *Id.*  But abstention only applies in "exceptional circumstances" where requiring the parties to litigate the case in state instead of federal court would "serve an important countervailing interest." *Id.* at 814 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

While Perez's Motion is certainly not a model of clarity, the Court does not construe it as one invoking the abstention doctrine.  Rather, Perez heavily argues the supplemental-jurisdiction issue, contending that the Court should decline to exercise the jurisdiction it admittedly has.  Even if Perez did argue abstention, the Court would not decline to exercise federal-question jurisdiction over his civil-rights claim, as this case does not present any "exceptional circumstances" for that result.

### B.   Supplemental jurisdiction

It is undisputed that this Court has federal-question jurisdiction over Perez's claim under the CRA.  The Court therefore has supplemental jurisdiction over Perez's state-law claims that arise out of the same nucleus of operative fact as the federal one. 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

But a court may decline supplemental jurisdiction over a state law claim if:

1        (1) the claim raises a novel or complex issue of State law,

2        (2) the claim substantially predominates over the claim or claims over

3           which the district court has original jurisdiction,

4        (3) the district court has dismissed all claims over which it has original

5           jurisdiction, or

6        (4) in exceptional circumstances, there are other compelling reasons for

7           declining jurisdiction.

8 28 U.S.C. § 1367(c).  In deciding whether to exercise supplemental jurisdiction, a

9 district court should weigh several factors, including "judicial economy, convenience,

10 fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988);

11 *see also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997).

12        Perez argues that the Court should decline to exercise supplemental jurisdiction

13 over his state-law claims because they present novel issues of state law entirely

14 independent from his one federal claim involving racial discrimination.  He points out

15 that the state-law claims involve negligence and other issues distinct from

16 discrimination.  He contends that the Court should leave the invasion-of-privacy claim

17 under the California Constitution to California courts to adjudicate.  Perez further

18 asserts that over 83 percent of the claims involve state law, and thus the state claims

19 substantially predominate over the sole federal one.

20        But Defendants argue that all of Perez's claims arise out of the same "wrong"

21 he allegedly suffered.  Contrary to Perez's argument, Defendants contend that all of

22 his allegations relate to all of the claims—federal or otherwise.  According to

23 Defendants, Remanding the state-law claims would thus frustrate supplemental

24 jurisdiction's purposes by creating piecemeal litigation of related claims with

25 potentially inconsistent results.

26        Defendants' argument that all of the claims arise out of the same set of facts

27 does little to advance the discretionary-declination analysis.  The argument is a

28 nonstarter because that is the situation in every case in which a federal court has

1  supplemental jurisdiction; indeed, this Court would not have supplemental jurisdiction

2  over Perez's state-law claims unless they arose out of the same common nucleus of

3  operative fact as his federal discrimination claim.  *See* 28 U.S.C. § 1367(a).  Thus, to

4  say that claims are transactionally related—and therefore that the Court has

5  supplemental jurisdiction—does not bear at all upon whether the Court should decline

6  to exercise the jurisdiction it otherwise has.

7      While the Court does not find that any particular § 1367(c) factor compels it to

8  decline to exercise supplemental jurisdiction, the Court does find that the totality of

9  the circumstances counsel against exercising jurisdiction over Perez's wrongful-

10  termination and invasion-of-privacy claims.  *See City of Chi.*, 522 U.S. at 173

11  (recognizing that declining to exercise supplemental jurisdiction depends on a "host of

12  factors").

13      Perez's claim for wrongful termination in violation of public policy arises from

14  the California Supreme Court's decision in *Tameny v. Atlantic Richfield Co.*, 27 Cal.

15  3d 167 (1980), in which the court held that an employee may bring a tort claim against

16  an employer that terminates her because she refused to comply with unlawful

17  directions from her employer.  *Id.* at 178.  Subsequent California decisions have

18  clarified the scope of this tort claim.  *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66,

19  75–77 (1998).

20      In *Green*, the California Supreme Court held that wrongful termination only

21  applies when an employer violates "an important public policy based on a statutory or

22  constitutional provision."  *Id.* at 79.  This holding highlights that the Court would have

23  to delve into California public policy to determine whether Perez's termination from

24  ECF violated that policy or the California Constitution.  In this nation's federalist

25  system, a federal court should avoid unnecessarily venturing into a state's sovereign

26  territory—especially when the Court would be required to discern vague notions of

27  "public policy."  That is a matter much better left to California state courts.

28  / / /

1    Perez's constitutional invasion-of-privacy claim presents a similar issue.  He

2    asserts that the claim arises under article I, section 1 of the California Constitution,

3    which recognizes that all people enjoy the right to privacy.  The right to privacy was

4    only added to the California Constitution on November 7, 1972, when California

5    voters approved the Privacy Initiative.  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.

6    4th 1, 15 (1994).  The amendment does not define "privacy," and case law interpreting

7    it is relatively green.  *See id.* at 16–19.  In *Hill,* the California Supreme Court

8    expounded an amorphous, three-part test to assess whether one's constitutional right

9    to privacy has been violated.  *Id.* at 35–37.  The test is by no means clear-cut and

10   requires a court to balance the gravity of an intrusion with the legally protected

11   privacy interest.  *Id.*

12   Given the scant California case law interpreting a person's constitutional right

13   to privacy, this Court would likely have to engage in further interpretation of the

14   California Constitution and its Privacy Initiative to determine whether Burbank's

15   actions traversed into constitutionally protected territory.  There is a very real

16   possibility that the Court would set persuasive precedent for later state and federal

17   decisions that might not accord with what California state courts would have

18   concluded.  Considering these concerns, California state courts are much better suited

19   to deal with this emerging issue and to refine the necessary framework for resolving it.

20   The common-law invasion-of-privacy claim presents a slightly weaker comity

21   issue, since the claim rests on fairly well-settled common law.  But as the California

22   Supreme Court noted, the common-law and California constitutional right-to-privacy

23   sources "are not unrelated."  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 227

24   (1998).  In fact, the court drew extensively "upon the one hundred years of legal

25   experience surrounding the term 'privacy'" in interpreting the constitutional right to

26   privacy at issue in *Hill*.  7 Cal. 4th at 23–27.  Therefore, the court that ultimately rules

27   upon Perez's constitutional right-to-privacy claim should likewise adjudicate his

28   common-law claim as well.  Here, that would be the state court.

1    But Perez's claims for intentional and negligent infliction of emotional distress

2    present a different situation.  From his allegations, one can discern that these claims

3    are largely derivative of the facts underlying Burbank's alleged "discrimination,

4    retaliation and harassment" set forth in his federal discrimination claim.  (*See* Compl.

5    ¶ 42.)  Since the Court must exercise jurisdiction over the discrimination claim, it

6    should prevent a needless duplication of judicial effort and accordingly keep the

7    emotional-distress claims as well.

8    As Defendants argue, the Court understands that remanding some of Perez's

9    state-law claims creates somewhat piecemeal litigation, since there will now be two

10   actions pending in different courts involving essentially the same facts.  But since the

11   Court parsed the claims out, each court does not necessarily have to be concerned with

12   ruling inconsistently with the other.  For example, this Court could easily find that

13   Burbank violated the CRA through her actions, while the state court could determine

14   that Burbank did not violate Perez's privacy right.  The different claims are essentially

15   distinct "wrongs," stemming from diverse protectionist concerns.   The Court's

16   concerns about breaking up this action are therefore assuaged.

17                              **V.    CONCLUSION**

18   For the reasons discussed above, the Court **GRANTS IN PART** Perez's partial

19   Motion to Remand (ECF No. 8.) and **REMANDS** his wrongful-termination and

20   invasion-of-privacy claims back to Los Angeles County Superior Court, case number

21   BC533030.  But the Court retains jurisdiction over Plaintiff's CRA and emotional-

22   distress claims.

23   **IT IS SO ORDERED.**

24

25   May 21, 2014

26

27   _____

28   **OTIS D. WRIGHT, II**
     **UNITED STATES DISTRICT JUDGE**

cc: order, docket, remand letter to
Los Angeles Superior Court,                    8